J-A24040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RASHEDI HASSAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| METHODIST SERVICES, BRIDGE | : | No. 2965 EDA 2023 |
| HOUSE FOR WOMEN, BETH ABRAMS, | : | |
| SANDRA FERNANDEZ, SHAWN | : | |
| BROCKENBROUGH, JOHN DOE AND | : | |
| JANE DOE | : | |

Appeal from the Order Entered October 18, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 200900102

BEFORE: LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED MARCH 5, 2025**

Rashedi Hassan ("Hassan") appeals from the order marking the action as settled and discontinued. We affirm.

In 2019, Hassan became a temporary resident at Bridge House for Women ("Bridge House"), a transitional housing facility for women in Philadelphia who come from homeless shelters and other insecure housing situations. As a resident of the facility, Hassan paid no rent; however, she was required to agree to numerous terms and conditions, and to sign and date each of the rules set forth in a resident handbook. Accordingly, by her written acknowledgment, Hassan agreed that the accommodation was not a tenancy or a landlord/tenant relationship and was, therefore, not subject to the Landlord Tenant Act. Hassan also agreed that she not allowed on the premises

between 9:00 a.m. and 4:00 p.m., and that her room was subject to daily inspections and searches without notification. Further, Hassan agreed that she would be subject to immediate termination for physical violence, abusive language, or non-compliance with the rules.

Despite acknowledging and agreeing to the terms and conditions of Bridge House, Hassan violated the program's abusive language policy and was terminated. Hassan was temporality reinstated into the program but thereafter violated numerous other Bridge House rules by yelling at staff members, violating the curfew, arguing with other residents, and engaging in disorderly conduct. On January 28, 2020, employees at Bridge House handed Hassan a discharge letter from the facility due to her violations. Hassan began threatening residents and staff and waiving a knife. Bridge House employees called 911 and asked the police to remove Hassan from the facility due to her aggressive and threatening behavior. Police arrived and removed Hassan. The following morning, however, Hassan returned to the facility by climbing through a window and began yelling and threatening residents and staff. Bridge House staff provided Hassan with a termination letter dated January 29, 2020, indicating that she had been discharged and was required to leave the premises immediately due to her use of language that was offensive, degrading, threatening or terroristic, and for threatening staff with a weapon. Bridge House staff again called 911, reporting that Hassan had been discharged from the program but came back by climbing through a window

and was acting aggressively and screaming and yelling at staff. When officers arrived, Hasssan refused to leave the premises. Police ultimately removed Hassan and issued her a summary citation for criminal trespass.[1]

Hassan thereafter filed a complaint naming as defendants the private citizens and entities involved in summoning the police, including Methodist Services, which provides services to vulnerable children, women, and families; Bridge House, which is Methodist Services' transitional housing service for women; and three employees of Bridge House, Michelle Flowers, Beth Abrams, and Sandra Fernandez. Hassan also sued the police officers who arrived at the facility in response to the 911 calls, including Officer Shawn Brockenbrough ("Officer Brockenbrough"), and two unidentified officers who were fictitiously named in the complaint as John Doe #1 and Jane Doe #1. Hassan asserted six counts against the officers, including: trespass/self-help eviction; assault and battery; false imprisonment/false arrest; intentional infliction of emotional distress; malicious prosecution; and abuse of process.

Following the filing of preliminary objections to the complaint, Hassan filed a first amended complaint. Officer Brockenbrough filed an answer to the first amended complaint on November 19, 2020, and attached thereto the 911 call log which identified two other officers who responded to the 911 calls: Officer Shahein Rasoli; and Officer Thomas Ndeto. Three months later, on

_____

[1] At some point, the summary citation was withdrawn.

February 12, 2021, Hassan sought leave to file a second amended complaint to add the names of the two officers in place of the Doe defendants,[2] and to add additional claims against the private defendants. Officer Brockenbrough did not file any opposition to the amendment. The private defendants objected to the amendment, claiming delay and prejudice. The trial court denied leave to amend the complaint. On October 12, 2021, Hassan filed a motion for leave to file a third amended complaint to add the names of the officers. Once again, the trial court denied leave to amend. The parties then filed motions for summary judgment. In June 2022, the trial court granted the motion for summary judgment filed by Officer Brockenbrough but denied the remaining motions.[3]

Hassan eventually settled her claims against the private defendants, and in April 2023, the parties signed and filed a settlement stipulation. However,

---

[2] Although Hassan's proposed new pleading added the two officers to the caption, by last name only, the body of the proposed amended pleading continued to reference the fictitious John Doe # 1 and Jane Doe #1. In fact, the only place where Officers Rasoli and Ndeto were mentioned in the proposed amended pleading was in a section entitled "Additional Defendants Added, which asserted no cause of action and instead vaguely stated that these officers were involved in Hassan's removal from Bridge House and arrest for criminal trespass. *See* Motion to Amend, 2/12/21, Exhibit at ¶¶ 211-14. Thus, the proposed new pleading did not assert any cause of action against Officers Rasoli and Ndeto.

[3] Hassan appealed from the order granting summary judgment in favor of Officer Brockenbrough; however, this Court quashed the appeal as interlocutory, given that claims remained pending against the other defendants. *See* Pa.R.A.P. 341(b)(1) (providing that a final order "disposes of all claims and of all parties").

the trial court did not sign and enter the stipulation marking the action as settled and discontinued until October 18, 2023. Hassan filed a timely notice of appeal from the October 18, 2023 entry, and both she and the trial court complied with Pa.R.A.P. 1925.[4]

Hassan raises the following issues for our review:

1. Whether an appeal is timely when filed within [thirty] days of the entry of final judgment and dismissal of parties to an action?

2. Whether a plaintiff may amend the pleadings by leave of court under Pa.R.Civ.P. 1033 in order to add additional parties within the statute of limitations, 42 Pa.C.S.[A.] § 5524, and where opposing counsel files a praecipe of non-opposition?

3. Whether court committed err in granting summary judgment to a police officer who committed an unlawful eviction where a landlord-tenant relationship was established and a material controversy in lack of probable cause was maintained?

Hassan's Brief at 7.

As a preliminary matter, we must determine whether this Court has jurisdiction to address the trial court's October 18, 2023 entry, as "the appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Knopick v. Boyle*, 189 A.3d 432, 436 (Pa. Super. 2018) (internal citation omitted). Generally, appellate courts have jurisdiction only over appeals taken from a final order. *See In re Bridgeport Fire Litigation*,

_____

[4] In its Rule 1925(a) opinion, the trial court did not address the issues raised in Hassan's concise statement, instead finding that Hassan's appeal was untimely filed and should be quashed. *See* Trial Court Opinion, 3/14/24, at unnumbered 1-2.

- 5 -

51 A.3d 224, 229 (Pa. Super. 2012). A final order is one that disposes of all the parties and all the claims; or is entered as a final order pursuant to the trial court's determination under Rule 341(c). **See** Pa.R.A.P. 341(b)(1), (3). An appeal may also be taken from "an order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Pa.R.A.P. 311(a)(8). A case may also be resolved against the final defendant by other than an order of court, such as when a case against the sole remaining defendant is discontinued or settled. **Burkey v. CCX, Inc.**, 106 A.3d 736, 739 (Pa. Super. 2014) (explaining that a docket entry to the effect that the claim was discontinued or settled will serve to render prior judgments final and appealable).

Additionally, because the timeliness of an appeal implicates our jurisdiction, this Court may not address the merits of the underlying issues raised by an appellant before determining whether the appeal was timely filed. **See Krankowski v. O'Neil**, 928 A.2d 284, 285 (Pa. Super. 2007). Pertinent to this issue, Pennsylvania Rule of Appellate Procedure 903(a) provides: "[e]xcept as otherwise prescribed by this rule, the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). Pursuant to Pa.R.A.P. 105(b), this Court may not enlarge time for filing a notice of appeal.

Here, the trial court determined that Hassan's appeal was untimely. The court reasoned:

The October 18, 2023 order appealed from is a joint stipulation discontinuing the action as to certain parties- it has no relation to the issues stated in [Hassan's] concise statement of errors. The issues raised in [Hassan's] concise statement of errors pertain entirely to [the] order granting [Officer Brockenbrough's] motion for summary judgment . . ..

[Hassan] already attempted an untimely appeal of [the summary judgment] order. [Hassan's] notice of appeal . . . was filed approximately ten months after the court's order granting the motion for summary judgment, far exceeding the thirty-day mandatory appeal period. . . .

Trial Court Opinion, 3/14/24, at unnumbered 1-2 (citations and unnecessary capitalization omitted).

Based on our review, we conclude that the instant appeal was timely filed from a final order. As indicated above, this Court quashed Hassan's prior appeal from the summary judgment order because that order was interlocutory, as it did not dispose of all claims and of all parties. **See** Pa.R.A.P. 341(b)(1). Instead, it merely disposed of the claims against Officer Brockenbrough, but left pending the various claims against Methodist Services, Bridge House, Michelle Flowers, Beth Abrams, and Sandra Fernandez. Those remaining claims were not disposed of until the entry of the October 18, 2023 stipulation marking the action as settled and discontinued as to all remaining defendants. **See Burkey**, 106 A.3d at 739. Thus, the October 18, 2023 entry is the final order in this matter. **See id**. As Hassan filed a timey notice of appeal from that order, her appeal is timely, and this Court has jurisdiction over the matter.

In her second issue, Hassan challenges the trial court's orders denying her requests for leave to amend the complaint to add the names of the two additional police officers in place of the Doe defendants. Our standard of review of an order denying leave to amend a complaint permits us to overturn the order only if the trial court erred as a matter of law or abused its discretion. *See Pollock v. NFL*, 171 A.3d 773, 778 (Pa. Super. 2017). The trial court enjoys broad discretion to grant or deny a petition to amend. *See id*. Although the court generally should exercise its discretion to permit amendment, where a party will be unable to state a claim on which relief could be granted, leave to amend should be denied. *See id*.

Rule 1033 governs amendments to pleadings, and provides that a party, "by leave of court, may at any time change the form of an action, add a person as a party, correct the name of a party, or otherwise amend the pleading." Pa.R.C.P. 1033(a). However, Rule 1033 imposes certain restrictions where an amendment to add a Doe defendant "relates back" to the commencement of the action for statute of limitations purposes:

> (c) An amendment substituting the actual name of a defendant for a Doe designation as provided in Rule 2005 relates back to the date of the commencement of the action if, within the time provided by Rule 401 for service, the defendant named by the amendment has received actual or constructive notice of the commencement of the action such that it will not be prejudiced in maintaining a defense on the merits and the defendant knew or should have known that the action would have been brought against it but for lack of knowledge of the defendant's actual name.

Pa.R.C.P. 1033.

Additionally, Pa.R.C.P. 2005 provides a specific time limitation and an affidavit requirement where a plaintiff seeks to amend a complaint to add the actual name of a Doe defendant:

> ***Within 20 days after the actual name of the defendant has been identified***, the plaintiff or joining party shall file a motion to amend the complaint pursuant to this rule and Rule 1033 by replacing the Doe designation with the defendant's actual name. ***An affidavit shall be attached to the motion*** describing the nature and extent of the investigation that was made to determine the identity of the defendant, and the date upon and the manner in which the defendant's actual name was identified.

Pa.R.C.P. 2005(c) (emphasis added). Where a trial court "finds that the party seeking the amendment failed to exercise due diligence in identifying the actual name of the defendant," the trial court may deny the motion to amend. Pa.R.C.P. 2005(d).

Hassan contends that she sought leave to amend the complaint and the officers twice within the statute of limitations period, on February 12, 2021, and again October 12, 2021. According to Hassan, no rational basis existed to deprive her of the requested amendment, particularly where Officer Brockenbrough did not oppose the requested amendment. Hassan acknowledges that Methodist Services strongly opposed the motion to amend based on the new claims that Hassan sought to assert against it. However, Hassan argues that Officer Brockenbrough, lacked standing to join in this opposition. Hassan additionally argues that Officer Brockenbrough "had already admitted and conceded a praecipe of non-opposition to [Hassan's] motion to add the additional parties within the 2-year statute of limitations"

and the "[c]ity's law department [*sic*] previous filing of a praecipe of non-objection is a waiver that should serve to act as a collateral estoppel, preventing them from opposing [Hassan's] arguments here on appeal and allow the matter to continue as to the additional parties." Hassan's Brief at 29-30 (unnecessary capitalization omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court in denying the motions to amend. Importantly, the motions to amend were not timely filed within the mandatory twenty-day timeframe required by Rule 2005(c). Pursuant to Rule 2005(c), Hassan was required to file "[w]ithin 20 days after the actual name of the defendant has been identified, . . . a motion to amend the complaint pursuant to [Rule 2005(c)] and Rule 1033 by replacing the Doe designation with the defendant's actual name." Pa.R.C.P. 2005(c). Officer Brockenbrough disclosed the identifies of Officers Rasoli and Ndeto on November 19, 2020, in the 911 call log attached to Officer Brockenbrough's answer to the first amended complaint. Therefore, Hassan had until December 9, 2020, in which to file a motion to amend. Hassan failed to do so, and her motions to amend filed on February 12, 2021, and October 12, 2021, were filed far beyond the timeframe permitted by Rule 2005(c). Moreover, Rule 2005(c) additionally requires that the motion to amend be accompanied by an "affidavit . . . describing the nature and extent of the investigation that was made to determine the identity of the defendant, and the date upon and the manner in which the defendant's actual name was

identified." Pa.R.C.P. 2005(c). Our review discloses that Hassan did not attach such an affidavit to either of her motions to amend. Given that Hassan failed to comply with the mandatory provisions of Rule 2005(c),[5] we discern no error or abuse of discretion by the trial court in denying the motions.[6]

In her third issue, Hassan challenges the trial court's order granting summary judgment to Officer Brockenbrough. In reviewing a grant of summary judgment, an appellate court's standard of review is *de novo* and the scope of review is plenary. ***See Bourgeois v. Snow Time, Inc.***, 242 A.3d 637, 649-50 (Pa. 2020). Further, when reviewing such an order:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial

---

[5] The fact that Officer Brockenbrough did not oppose the amendment is of no consequence to our disposition, as the provisions of Rule 2005(c) are mandatory in nature and provide that the plaintiff "***shall***" file the motion to amend within twenty days of the discovery of the actual name of the Doe defendant and "***shall***" attach an affidavit detailing the date upon and the manner in which the defendant's actual name was identified. Pa.R.C.P. 2005(c).

[6] We note that the record is devoid of any indication or explanation by the trial court as to the basis for its denial of Hassan's motions to amend her pleadings. Nonetheless, this Court may affirm a ruling of the trial court on any legitimate basis appearing of record. ***See Fitzpatrick v. Natter***, 961 A.2d 1229, 1244 n.17 (Pa. 2008) (holding that an appellate court may affirm the order of the court below if the result reached is correct without regard to the grounds relied upon by that court).

- 11 -

court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Phillips v. Lock**, 86 A.3d 906, 912-13 (citation omitted).

"In response to a summary judgment motion, the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts demonstrating a genuine issue of material fact." **Id**.; **see also** Pa.R.C.P. 1035.3(a). Accordingly, the "failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." **JP Morgan Chase Bank, N.A. v. Murray**, 63 A.3d 1258, 1262 (Pa. Super. 2013) (citation omitted); **see also** Pa.R.C.P. 1035.2(2). Thus, it is this Court's responsibility "to determine whether the record either established that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder." **Gerber v. Piergrossi**, 142 A.3d 854, 858 (Pa. Super. 2016) (citation omitted).

Hassan summarily argues that facts of record showed that Officer Brockenbrough committed an unlawful eviction in violation of the Landlord Tenant Act, the Philadelphia Code, and Philadelphia Police directives. Hassan claims that "overwhelming documentation exists that [she] was a party to a contract for housing services with her Landlord." Hassan's Brief at 38. Hassan additionally provides a conclusory argument that the facts of record establish that Officer Brockenbrough lacked probable cause to arrest her because "she

had a lawful right to be in her own residence." *Id*. at 40. Hassan argues that she "established that criminal proceedings were brought against her, and were terminated in her favor." *Id*. Hassan claims that the document that she signed agreeing that her residency at Bridge House was not a tenancy and that no landlord/tenant relationship exited is "unenforceable as against public policy, [and Officer Brockenbrough] lacks standing to assert it because [the officer is] not an intended beneficiary of the contract for housing services between [Hassan] and her Landlord." *Id*. at 38.

Based on our review, we discern no abuse of discretion or error of law by the trial court in granting Officer Brockenbrough's motion for summary judgment. Initially, we note that each of Hassan's conclusory and undeveloped arguments is premised on her unsupported belief that a landlord-tenant relationship existed between herself and Bridge House. However, the record is clear that there was no lease, no tenancy, no landlord/tenant relationship, and no unlawful eviction. Indeed, the undisputed facts of record establish just the opposite, given that Hassan signed and dated a document in which she agreed that her "participation in The Bridge House Transitional Housing Program for Women does not constitute a landlord/tenant relationship and the terms and conditions under the Landlord Tenant Act do not apply." Bridge House Document, 11/12/19; *see also* Officer Brockenbrough's Motion for Summary Judgment, 5/3/22, at ¶ 20.

We further conclude that no genuine issue of material fact was presented by Hassan's bald assertion that this document is unenforceable. Our review of Hassan's opposition to Officer Brockenbrough's motion for summary judgment reflects that Hassan asserted that this document was an exculpatory clause that was unenforceable because such clauses "amount to unilateral terms of adhesion, particularly in the context of landlord-tenant relationships which are consumer contracts for housing services." Hassan's Memorandum of Law in Opposition to Officer Brockenbrough's Motion for Summary Judgment, 5/27/22, at unnumbered 6. In support of her argument, Hassan cited three cases, two of which dealt with landlord-tenant disputes regarding provisions in written lease agreements.[7] *See id*. at unnumbered 6-7. Notably, Hassan did not provide the trial court with any factual or legal support for her argument that she entered a lease agreement with Bridge House, or that the document she signed acknowledging that no

_____

[7] Specifically, Hassan cited: ***Commonwealth by Creamer v. Monumental Props., Inc.***, 329 A.2d 812, 815 (Pa. 1974) (addressing whether the Consumer Protection Law extend to allegedly unfair or deceptive practices in connection with printed form leases used by landlords in connection with the leasing of housing); ***Galligan v. Arovitch***, 219 A.2d 463, 464 (Pa. 1966) (considering an exculpatory clause contained in a written lease agreement between a landlord and tenant); and ***Denlinger, Inc. v. Dendler***, 608 A.2d 1061, 1062 (Pa. Super. 1992) (considering an appeal from the grant of summary judgment in appellant's action to collect on an open account from appellee, pursuant to a personal guarantee that was written on the back of a credit application).

landlord/tenant relationship existed was a condition of such a lease agreement that was unenforceable.

Finally, we note that Hassan has not meaningfully addressed the factual record relating to her remaining claims against Officer Brockenbrough. As explained above, in response to a motion for summary judgment, the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts demonstrating a genuine issue of material fact. **Phillips**, 86 A.3d at 912-13; **see also** Pa.R.C.P. 1035.3(a). Here, Hassan has not provided this Court with any discussion of, or reference to, the specific facts she presented to the trial court to establish that genuine issues of material fact existed in relation to her claims for assault and battery, false imprisonment/false arrest, intentional infliction of emotional distress, malicious prosecution, and abuse of process. **See** Pa.R.A.P. 2119(a) (providing that the argument section of an appellant's brief shall include a discussion and citation of authorities as are deemed pertinent); **see also Connor v. Crozer Keystone Health Sys.**, 832 A.2d 1112, 1118 (Pa. Super. 2003) (explaining that this Court has consistently held that arguments that are not appropriately developed are waived, noting that the appellant has the burden of establishing its entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law). Instead, Hassan continues to rely on her unsupported assertions that a landlord-tenant relationship existed and the document she signed to the contrary was

unenforceable. ***See In re S.T.S., Jr.***, 76 A.3d 24, 42 (Pa. Super. 2013) (explaining that mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter). Thus, we conclude that Hassan failed to meet her burden of establishing that a genuine issue of material fact existed with respect to her claims against Officer Brockenbrough. ***See Murray***, 63 A.3d at 1262; ***see also*** Pa.R.C.P. 1035.2(2). Accordingly, we affirm the trial court's order granting summary judgment in favor of Officer Brockenbrough.[8]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2025

---

[8] We note that the record is silent as to the basis for the trial court's grant of summary judgment in favor of Officer Brockenbrough. However, as explained above, we may affirm that ruling on any basis appearing of record. ***See Fitzpatrick***, 961 A.2d at 1244 n.17.