## Morton, Appellant, *v.* Ambridge Borough.

Argued October 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Ralph E. Smith,* with him *Myron E. Rowley, James E. Rowley* and *Rowley & Smith,* for appellant.

*Robert L. Orr,* with him *Eugene A. Caputo* and *Reed, Ewing & Ray,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 4, 1954:

This is an appeal from a judgment entered on a directed verdict for the defendant borough in an action in trespass to recover for property damage suffered when a storm sewer collapsed.

In April and May of 1948, plaintiff purchased five lots in the Borough of Ambridge, Beaver County. The deeds delivered to plaintiff were made subject to the following easements or conditions: "3. There is hereby reserved to Charles A. Dickson, his heirs and assigns, the right to enter upon any of the lots and upon any of the streets, alleys or ways which are crossed by a natural drainage course upon the land upon which said plat of lots, streets, alleys and ways, is laid out, which water course is approximately indicated by the line upon the Plan marked 'A-B.' This

reservation or right of entry is for the purpose of enabling the said Charles A. Dickson or his assigns, or any person or persons acting by or with his consent, to construct a sewer or other appropriate improved water course, it being understood that the private right to Charles A. Dickson hereby reserved shall cease and determine whenever and as soon as a public sewer or other waterway may be constructed to care for the water flowing in said water course.".

"4. This adoption and dedication of streets, alleys and ways is not to be construed as a prohibition upon the construction, maintenance and operation upon the streets, alleys and ways of said plan of any appropriate privately or publicly owned system of pipes for the distribution and supply of water, gas, sewage or other pipeable substance to the owners of the lots embraced in the said plan; provided always that such construction, operation and maintenance of pipes for water, gas, sewage or other pipeable substance shall always be construed as conferring a benefit upon the owners of the several lots in said plan, and no owner of any such lot may or shall have any claim for damage against the said Charles A. Dickson, his heirs or assigns, by reason of such construction, operation, and maintenance.". The rights reserved to Charles A. Dickson had been assigned to the defendant borough in 1942.

Prior to the time plaintiff purchased the lots, an 84 inch storm sewer had been built along the lines of the natural watercourse referred to in the reservation above quoted. The sewer was constructed in various sections, at various times and by various parties. The portion underlying plaintiff's land had been constructed in 1926 by a predecessor in title.

In 1949 plaintiff constructed a one story, no basement brick building used as an automobile sales

and service garage on the site of the five lots he had purchased in 1948. On September 11, 1950, a heavy rain storm occurred and a portion of the sewer under plaintiff's building collapsed with the result that a hole 30 feet in diameter and 17 feet deep developed in the floor of plaintiff's garage.

At the trial testimony was introduced on behalf of the plaintiff that the defendant borough had connected several lateral sewers to the 84 inch sewer, which had the effect of increasing the flow of water in the storm sewer by some 20%. Plaintiff's expert witnesses testified that the laterals were in a state of disrepair which permitted water to seep or flow into the earth surrounding the sewer rather than to be confined within the sewer itself, and that the defects were such that would have been apparent upon a reasonable inspection. Plaintiff's expert witnesses further testified that this seepage or percolation of water so weakened the fill around the sewer that when it was subjected to the heavy rain storm of September 11, 1950, the sewer collapsed, and the plaintiff's building thereby was damaged. In this state of the record, with a directed verdict entered for the defendant, we must accept as true all facts and proper inferences from testimony which tends to support plaintiff's contention, and reject all testimony and inferences to the contrary: *Henigin v. Booth & Flinn, Ltd.,* 307 Pa. 528, 161 A. 871.

Appellant contends that he introduced sufficient evidence to create an issue of fact for the jury on the question of the negligence of the appellee. Appellee contends that the direction of a verdict in its favor was proper and relies on the authority of *Munn and Barton v. The Mayor, &c., of Pittsburgh,* 40 Pa. 364. This case does not support appellee's position. It holds that where a storm sewer has been constructed by one

other than the municipality on the line of a natural watercourse and the municipality connects its own sewer with it and in addition occasionally inspects the entire sewer, the municipality does not thereby adopt the sewer as its own or assume the duty of maintaining the entire sewer. In the instant case the appellant's proof was to the effect that the injury to his building resulted from appellee's failure to inspect and maintain the lateral connections which the borough made to the main sewer and also from the increased flow of water which resulted from those lateral connections and thus prima facie established a clear causal chain connecting appellee's negligent actions with appellant's damages. *Aron v. Philadelphia,* 310 Pa. 84, 164 A. 777, also relied upon by appellee, concerns the question whether a municipality can be held liable for an error of judgment in the selection of its plan for the discharge of surface waters, and is therefore inapposite.

It must be concluded that appellant introduced sufficient evidence to create a jury question whether appellee was negligent and as a result of such negligence appellant was damaged; however, a further legal question arises as to appellee's liability. Appellee contends that because of the easement reserved to Charles A. Dickson and subsequently assigned to the borough, appellant can have no cause of action because of negligence in the construction, operation or maintenance of the sewer. The nature of the reserved right must therefore be determined. Paragraph three of the original deed reserved to the grantor the right to enter upon any of the lots, streets, alleys or ways of the development which are crossed by a natural watercourse until such time as a public sewer or other waterway be constructed to care for the water flowing in a natural watercourse. As is expressly stated in

paragraph three, the obvious purpose of the reserved easement was ". . . for the purpose of enabling the said Charles A. Dickson or his assigns, or any person or persons acting by or with his consent, to construct a sewer or other appropriate improved water course, . . .". Since the instant action was not founded on any theory of damages resulting from an entry for the purpose of constructing a sewer, it has no bearing on the facts of this case.

The reservation in paragraph four of the original deed provided that the grantor retained the right to construct, maintain and operate upon the streets, alleys and ways of the plan ". . . any appropriate privately or publicly owned system of pipes for the distribution and supply of water, gas, sewage or other pipeable substance to the owners of the lots embraced in the said plan; provided always that such *construction, operation and maintenance* of pipes for water, gas, sewage or other pipeable substance shall always be construed as conferring a benefit upon the owners of the several lots in said plan, and no owner of any such lot may or shall have any claim for damage against the said Charles A. Dickson, his heirs or assigns, by reason of *such construction, operation, and maintenance.*". (Emphasis supplied) Appellee contends that since appellant's land is subject to this easement, which appellant does not deny, appellant can maintain no action arising out of negligence in the operation and maintenance of the sewer. An agreement or instrument by which it is intended to diminish legal rights which normally accrue as a result of a given legal relationship or transaction must spell out the intention of the parties with the greatest of particularity, since such contracts or instruments are construed strictly against the party seeking their protection: *J. L. Crew et al. v. The Bradstreet Co.,* 134

Pa. 161, 19 A. 500; *Schroeder v. Gulf Refining Co. (No. 2)*, 300 Pa. 405, 150 A. 665. Aside from the fact that the reservation in paragraph four of the original deed would appear to be referable to the right to construct, maintain and operate a "system" of public utility lines upon streets, alleys and ways for the "distribution and supply" of water, gas, sewage and other pipeable substances *"to the owners of the lots"*, and may not be applicable to the storm sewer and laterals here involved, it is to be noted that nowhere in this paragraph do the words "negligent", "negligence", "negligently" or words of similar import appear. We construe the language of this paragraph to mean that appellant or others who purchased plots of land subject to the provisions of this paragraph have no right to recover damages for trespass quare clausum fregit because of an entry upon that land by an assignee of Charles A. Dickson for the purpose of constructing, maintaining or operating ". . . pipes for the distribution and supply of water, gas, sewage or other pipeable substances to the owners of the lots embraced in the said plan; . . .", but that the language does not in any manner impair appellant's normal right to recover for damages suffered as the result of negligence on the part of the defendant borough as assignee of the original grantor.

Judgment reversed and a new trial granted.