687 So.2d 353 (1997)
Cara DILALLO, a minor, by and through her mother and next friend, Jo Anne DILALLO, and Jo Anne Dilallo, Individually, Appellants,
v.
RIDING SAFELY, INC., d/b/a Bar-B Ranch, Appellee.
No. 95-4323.
District Court of Appeal of Florida, Fourth District.
February 12, 1997.
*354 Lawrence Michael Flaster of Flaster & Bates, Plantation, for appellants.
Thomas J. McCausland of Law Office of Bohdan Neswiacheny, Fort Lauderdale, for appellee.
BROWN, LUCY C., Associate Judge.
Appellants seek reversal of a summary final judgment in favor of the appellee, Riding Safely, Inc., d/b/a Bar-B Ranch ("Bar-B"). The trial court in granting summary judgment found that the provisions of chapter 773, Florida Statutes (1993), immunized Bar-B from liability. Further, the trial court found as a matter of law that the minor child, by signing a written release before engaging in horseback riding, expressly assumed and consented to the risk of injury. We reverse and remand for the reasons set forth below.
The horseback riding accident which forms the basis for appellants' claim caused injury to Cara Dilallo, then just under 14 years of age. The record before the trial court, viewed in the light most favorable to the nonmoving party as required on a motion for summary judgment, Moore v. Morris, 475 So.2d 666 (Fla.1985), demonstrated the following facts. Cara had leased a horse from Bar-B once before the date of the accident. On the prior ride, Cara's horse did not move any faster than a walk. Bar-B on the date in question, knowing that Cara had only ridden once in the past, categorized her as a "beginner," and proceeded to have Cara read and sign a "Release and Assumption of Risk" form. Cara presumed the horse that she was given to ride would go no faster than a walking gait, as had been her experience on her one previous horse ride. On the date in question, however, Cara's horse began to move on its own initiative, at a faster gait, and Cara's attempt to pull back on the reins and stop the horse failed. Cara collided with the branch of a tree as the horse ran close to it, causing injury when the branch became imbedded into her leg.
Appellants alleged that if Cara had been made aware that the horse could suddenly, on its own initiative, go from a walk to a *355 faster gait, she would not have leased the horse. Further, appellants alleged that Bar-B had actual or constructive knowledge that horses move from a stand still or walk without notice, that inexperienced riders such as Cara do not have control over the horses they are riding and are therefore subject to increased risk of injury if unsupervised, that Cara had inadequate supervision, and that had the child been adequately supervised, the incident would not have occurred.
Bar-B moved for summary judgment, asserting, inter alia, that it was immunized from liability by section 773.01 et seq., Florida Statutes (1993), relating to equine activities, and that Cara had expressly assumed the risk of injury and consented to same by signing the release form which specifically stated:
In consideration for permission granted to me to ride stock leased by the Bar-B-Ranch, on their premises or elsewhere, I hereby, for myself, my heirs, administrators, and assigns, release, remise, and discharge the Riding Safely, Inc. owners and operators of the Bar-B-Ranch, and their agents and employees, of and from all claims, demands, actions and injuries, sustained to my person and/or property as a result of any act(s), omission(s), and/or negligence, of Riding Safely, Inc. the owners and operators of Bar-B-Ranch, and their agents and employees, while riding stock leased by the Bar-B-Ranch, on the premises of the Bar-B-Ranch or elsewhere.
I am aware of the risks and dangers involved in horseback riding and that unanticipated and unexpected dangers may arise, and I assume all risks of injury to my person and property that may be sustained as a result.
I represent and certify that I am of age and if I am under the age of 18 years old, I represent and certify that I have the permission of my parents and/or guardian to rent and ride stock leased by the Bar-B-Ranch, and that they have full knowledge thereof.
I further agree to take full responsibility of stock while entrusted to me. I understand that there is no running of the horses, only walk and trot ...
I further agree to ride the horse that has been assigned to me, and not switch horses.
I HAVE READ AND UNDERSTOOD THE ABOVE
Bar-B further relied on a sign located at the riding establishment which read: "CAUTION: HORSEBACK RIDING CAN BE DANGEROUS RIDE AT YOUR OWN RISK".
THE EFFECT OF CHAPTER 773, FLORIDA STATUTES (1993)
The trial court agreed that chapter 773 effectively immunized Bar-B from liability for injury to Cara resulting from the inherent risks of equine activities. Counsel for Bar-B, in arguing that chapter 773 required the trial judge to grant summary judgment, did not advise the trial court that the statute became effective after the date of Cara's accident. Appellee's counsel conceded to this court that he had not checked the effective date of the statute when arguing for summary judgment. We note that the Rules of Professional Conduct of the Florida Bar require candor toward the tribunal, and a duty of competence. Rule 4-1.1 and Rule 4-3.3(3) imply a duty to know and disclose to the court adverse legal authority. We construe these rules to also require an attorney to provide full information to the trial court such that the court has all necessary information to determine the issue presented to it. We are troubled by the fact that the trial court applied chapter 773 as urged by appellee without the necessary information as to the effective date of the statute. On appeal, appellants argue that chapter 773 should not be retroactively applied. Appellee, however, contends that we cannot consider this point on appeal because it was not raised at the trial court level. Appellee's counsel, having failed to disclose to the court below the fact that his argument was predicated upon a statute not yet in effect on the date of the accident, cannot now benefit from his own improper conduct by virtue of this "gotcha" argument.
*356 In any event, we hold that this issue is properly before this court as a question of law. Further, we hold that chapter 773 cannot be applied retroactively. Section 773.02, Florida Statutes (1993), provides in pertinent part:
[A]n equine activity sponsor [such as Bar-B]... shall not be liable for an injury to or the death of a participant [such as Cara] resulting from the inherent risks of equine activities and, except as provided in s. 773.03, no participant nor any participant's representative shall have any claim against or recover from any equine activity sponsor... for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.
Section 773.01(6) states that "Inherent risks of equine activities" mean "those dangers or conditions which are an integral part of equine activities, including, but not limited to:... (d) Collisions with other equines or objects." § 773.01(6), Fla. Stat. (1993).
We find this to be a substantive statute because it eliminates a right. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla. 1994) (substantive law prescribes rights and duties whereas procedural law concerns the means and methods to apply and enforce those duties and rights). "A substantive statute is presumed to operate prospectively rather than retrospectively unless the Legislature clearly expresses its intent that the statute is to operate retrospectively. This is especially true when retrospective operation of a law would impair or destroy existing rights." Id. at 1358 (emphasis supplied, citations omitted). Chapter 773 does not provide for retroactive application.
It is clear that the Legislature intended to destroy existing rights by barring recovery for persons injured by equine activity and reviving a defense that was not available on the effective date of the legislation to protect equine owners or sponsors, namely the affirmative defense of assumption of the risk. The legislative history provides:
[Chapter 773] would create a complete bar to recovery for an equine activity participant except when law would expressly place specific responsibilities on an equine owner or sponsor. In effect, the provisions of the amendment would bring back the affirmative defense of assumption of risk for equine owners or sponsors unless a specified responsibility has been breached....
Senate Staff Analysis and Economic Impact Statement, CS/SB 1658 (March 24, 1993) (emphasis supplied).
Accordingly, we conclude that the trial court reversibly erred in applying chapter 773 retroactively to bar appellants' claim.
EXPRESS ASSUMPTION OF RISK BY VIRTUE OF SIGNING WAIVER
In Blackburn v. Dorta, 348 So.2d 287 (Fla.1977), the Florida Supreme Court held that the defense of implied assumption of the risk was merged with the defense of contributory negligence when the court adopted the doctrine of comparative negligence. However, the doctrine of express assumption of the risk as a contractual concept remained viable. "Included within the definition of express assumption of risk are express contracts not to sue for injury or loss which may thereafter be occasioned by [the defendants'] negligence...." Id. at 290.
This court has held that exculpatory clauses which clearly state that a party is released from liability for its own negligence in clear and unequivocal words are effective. Van Tuyn v. Zurich Am. Ins. Co., 447 So.2d 318 (Fla. 4th DCA 1984). We find the release in this case does clearly state that Bar-B is released from liability for its own negligence. This factual scenario would support summary judgment, had Cara, the person signing this complete waiver of her rights, not been a minor. Cara was not yet 14 years old at the time she signed the document which was required before she was allowed to ride her horse.
Whether a minor child injured because of a defendant's negligence can effectively contractually waive her right to hold that defendant liable is an issue of first impression in Florida. In Byrne v. Simco Sales Service of Penna., Inc., 179 F.Supp. 569 (E.D.Pa.1960), a minor in Pennsylvania working as an ice cream truck driver was killed while driving the truck. In that case, *357 an exculpatory clause holding the ice cream truck company harmless for any injury arising from the use of the truck was found ineffective. The court held that the state policy of protecting minors by denying enforcement of their contracts (other than contracts for necessities) was especially applicable where the minor had contracted away his right to recover damages. Id. at 570; see also Smoky, Inc. v. McCray, 196 Ga.App. 650, 396 S.E.2d 794, 797 (1990) (contract by 14 year old waiving all claims against ranch arising out of horseback riding lessons was a voidable contract not for a "necessary", disaffirmed by minor's filing lawsuit for damages); Del Santo v. Bristol County Stadium, Inc., 273 F.2d 605 (1st Cir.1960); Celli v. Sports Car Club of Am., Inc., 29 Cal.App.3d 511, 105 Cal.Rptr. 904 (1972).
We find the rationale of Byrne persuasive. The state of Florida has virtually the same policy:

Except as to a very limited class of contracts considered binding, as for necessities, etc., the modern rule is that the contract of an infant is voidable rather than void. This rule applies to both executed and executory contracts, but with different application of the word voidable. To say that the executed contract of an infant is voidable means that it is binding until it is avoided by some act indicating that the party refuses longer to be bound by it.
Lee v. Thompson, 124 Fla. 494, 499, 168 So. 848, 850 (Fla.1936) (emphasis supplied). Cara's act of filing a lawsuit for damages clearly indicates her refusal to be bound by her waiver. See Del Santo, 273 F.2d at 607 ("Bearing in mind that a release of a future claim is in effect a covenant not to sue, it would be difficult to imagine a more direct repudiation of such agreement than the institution of suit."); see also Smoky, Inc., 396 S.E.2d at 797; Celli, 105 Cal.Rptr. at 908.
We adopt the rationale of Byrne in order to effectuate this state's policy of protecting minors. We now hold that a minor child injured because of a defendant's negligence is not bound by her contractual waiver of her right to file a lawsuit.
For the reasons stated herein, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
GLICKSTEIN and STEVENSON, JJ., concur.